HALL, Appellant and Cross–Appellee,

v.

TUCKER, Appellee and Cross–Appellant.

[Cite as *Hall v. Tucker,* 161 Ohio App.3d 245, 2005-Ohio-2674.]

Court of Appeals of Ohio,
Fourth District, Jackson County.

No. 04CA2.

Decided May 26, 2005.

John M. Manos, for appellant and cross-appellee.

Shannon S. Weber, for appellee and cross-appellant.

KLINE, Judge.

{¶ 1} Virgil Hall appeals the judgment of the Jackson County Court of Common Pleas granting Robert A. Tucker's motion to dismiss Hall's request for restitution and claim for conversion for lack of personal jurisdiction and granting Tucker's motion for summary judgment with regard to Hall's abuse-of-process claim. Because we find that Hall's complaint alleges sufficient facts to permit

reasonable minds to conclude that the trial court has personal jurisdiction over Tucker, and because we find that Tucker has sufficient contacts with this state to satisfy the requirements of due process, we conclude that Hall made a prima facie showing that the trial court may properly exercise personal jurisdiction over Tucker. Because we find that Hall sufficiently demonstrated the existence of a genuine issue of material fact with regard to Tucker's intent to pervert the legal process to achieve an ulterior purpose for which it was not designed, we conclude that the trial court improperly granted Tucker's motion for summary judgment as to Hall's abuse-of-process claim.

{¶ 2} Tucker cross-appeals, asserting that the doctrine of res judicata serves to bar Hall's cause of action, which Tucker alleges is an impermissible collateral attack on the prior arbitration award of the United States District Court of New Jersey. We find that the doctrine of res judicata does not bar Hall's request for restitution or his claims for conversion and abuse of process because they (1) arose out of Tucker's conduct during or after the prior litigation, (2) were not actually litigated in the prior action, and (3) could not have been litigated in that action.

{¶ 3} Additionally, Tucker asserts that the trial court should have dismissed Hall's claims because it lacked subject-matter jurisdiction over his causes of action. Because Tucker filed the New Jersey judgment in the Jackson County Court of Common Pleas pursuant to the Uniform Enforcement of Foreign Judgments Act ("UEFJA"), we conclude that the trial court has subject-matter jurisdiction to enforce the New Jersey judgment. Furthermore, to the extent that Hall's claims involve matters beyond the enforcement of the New Jersey judgment, we hold that the trial court has subject-matter jurisdiction pursuant to R.C. 2305.01 because the sum or matter in dispute exceeds $15,000.

{¶ 4} Accordingly, we sustain each of Hall's assignments of error, overrule each of Tucker's assignments of error, reverse the trial court's judgment, and remand this cause for further proceedings consistent with this opinion.

I

{¶ 5} Hall is a resident of Jackson County, Ohio, and formerly owned and operated a standardbred horse farm in Jackson, Ohio. Tucker is a resident of the state of New Jersey and operates a horse farm in that state. In February 1998, Tucker purchased a standardbred brood mare, Tambourine, from Hall. At the time of the purchase, Tambourine was in foal. Tucker paid $57,500, with a balance of $7,500 to be paid after Tambourine gave birth to her foal. After Tucker took possession of Tambourine, the horse began to experience medical problems and her foal was eventually born undersized. Thereafter, Tucker filed

suit against Hall in the United States District Court of New Jersey to rescind the sale.

{¶ 6} The New Jersey court referred the dispute to arbitration. There, the arbitrator found that Hall was aware of Tambourine's condition and failed to disclose it to Tucker before the sale. The arbitrator also found that Tambourine's medical problems were ongoing and severely compromised her usefulness as a brood mare. Thus, the horse was not fit for the purpose for which it was sold. The arbitrator concluded that rescission of the sale was an appropriate remedy, coupled with monetary damages reflecting the costs Tucker incurred in caring for Tambourine.

{¶ 7} Accordingly, the arbitrator issued an arbitration award which provided as follows:

1. [Tucker] is entitled to equitable remedy of recission [sic]. [Tucker] is to return the horse known as "Tambourine" to [Hall]. [Hall] is to return payments totaling $57,500.00 on account of purchase price to [Tucker].

2. [Tucker] is entitled to further damages as follows:

A. $36,271.33—Expenses incurred in connection with care of Tambourine.

B. $8,834.20—Expenses incurred in connection with care of the foal.

3. This amount should be reduced by the price obtained for the foal at the Harrisburg auction. If the price exceeds $45,105.53, the excess amount is to be returned to [Hall] less costs incurred by [Tucker] in connection with the sale.

{¶ 8} Neither party appealed the arbitration award, and on December 29, 1999, the New Jersey court reduced it to judgment. Tucker filed the judgment in the United States District Court for the Southern District of Ohio in February 2000 and successfully garnished $8,649 from Hall's bank accounts. On March 13, 2000, Tucker filed the judgment in the Jackson County Court of Common Pleas, thereby placing a lien upon all of the land and tenements Hall owned in Jackson County. Tucker filed a complaint to marshal liens against all of Hall's property in Jackson County and thereafter commenced foreclosure proceedings against Hall's Jackson County farm.

{¶ 9} In November 2000, Hall paid Tucker $91,135.02 in full satisfaction of the New Jersey judgment. Tucker released the lien upon Hall's property but failed to return Tambourine to Hall.

{¶ 10} In October 2001, Hall filed a complaint against Tucker in the Jackson County Court of Common Pleas (1) requesting the equitable relief of restitution of all funds Hall paid to Tucker under the New Jersey judgment, (2) stating a cause of action for conversion, and (3) stating a cause of action for abuse of process. Tucker moved to dismiss the complaint, alleging that the trial court lacked both personal and subject-matter jurisdiction. In ruling upon Tucker's

motion, the trial court found that Hall had set forth sufficient allegations at that time to establish jurisdiction. However, the trial court concluded that because the basis of its jurisdiction was Tucker's alleged tortious conduct relative to the abuse-of-process claim, it had jurisdiction to consider only those causes of action arising out of that tortious conduct. The trial court concluded that Hall's request for restitution and claim for conversion "involve matters beyond the alleged tortious conduct and involve matters this Court does not have jurisdiction over." Accordingly, the trial court dismissed counts one and two of Hall's complaint.

{¶ 11} Thereafter, Tucker moved the court for summary judgment on the cause of action for abuse of process, claiming that (1) Hall had no evidence that Tucker harbored an ulterior purpose, (2) Hall had no evidence that he suffered direct damages as a result of the alleged abuse of process, and (3) Hall failed to plead that Tucker acted with probable cause in the prior proceedings before the Jackson County Court of Common Pleas.

{¶ 12} On February 18, 2004, the trial court granted Tucker's motion for summary judgment. In its entry, the trial court found that Tucker had the right to file the New Jersey certificate of judgment in Ohio placing a lien upon Hall's real estate and to file an action for marshaling of liens to collect the judgment. The trial court noted that if Hall had a claim for abuse of process, it rested upon Tucker's continued efforts to keep the horse and his failure to return the horse. However, the trial court concluded that it had no jurisdiction to enforce the New Jersey judgment unless the horse was present in Ohio. Ultimately, the trial court concluded that Hall could not show that Tucker perverted his efforts to enforce the New Jersey judgment in an attempt to accomplish an ulterior purpose for which the process was not designed. Accordingly, the trial court concluded that there was no genuine issue as to any material fact and that Tucker was entitled to judgment as a matter of law.

{¶ 13} Hall appeals raising the following assignments of error: "I. The trial court's dismissal of Hall's claims for conversion and restitution based upon lack of personal jurisdiction over Tucker was contrary to law. II. Dismissal of Hall's abuse of process claim after finding that Hall sought to achieve that which a court was powerless to order is reversible error."

{¶ 14} Tucker also appeals, raising the following cross-assignments of error: "[I.] Hall's cause of action is an impermissible collateral attack on the arbitration award of the United States District Court of New Jersey and is barred by the principle of *res judicata*, and should have been dismissed on that basis. [II.] The Jackson County Court of Common Pleas does not have subject matter jurisdiction over Hall's cause of action and [the action] should have been dismissed on that basis."

## II

{¶ 15} In his first assignment of error, Hall argues that the trial court improperly concluded that it lacked personal jurisdiction over Tucker with regard to Hall's request for the equitable relief of restitution and his claim for conversion.

{¶ 16} If Hall's complaint fails to establish a prima facie case for the trial court to exercise of personal jurisdiction over Tucker, the trial court can properly dismiss the complaint without a hearing pursuant to Civ.R. 12(B)(2). *KB Circuits, Inc. v. BECS Technology, Inc.* (Jan. 18, 2001), Franklin App. No. 00AP–621, 2001 WL 40584, at * 2. However, when a trial court determines its jurisdiction without conducting an evidentiary hearing, it must view all allegations in the pleadings and the documentary evidence in a light most favorable to the plaintiff and resolve all reasonable competing inferences in his favor. *Goldstein v. Christiansen* (1994), 70 Ohio St.3d 232, 236, 638 N.E.2d 541. The existence of personal jurisdiction is a question of law, which we review de novo. *Robinson v. Koch Refining Co.* (June 17, 1999), Franklin App. No. 98AP–900, 1999 WL 394512, at * 1.

{¶ 17} Neither party submitted evidentiary materials in support of his jurisdictional arguments below. Accordingly, we restrict our review to the allegations contained in Hall's complaint. If the allegations contained in the complaint would permit reasonable minds to find personal jurisdiction, we must reverse the trial court's dismissal for lack of personal jurisdiction. *Giachetti v. Holmes* (1984), 14 Ohio App.3d 306, 307, 14 OBR 371, 471 N.E.2d 165.

{¶ 18} The determination whether a state court has personal jurisdiction over a nonresident defendant is a two-step process. *U.S. Sprint Communications Co., Ltd. Partnership v. Mr. K's Foods, Inc.* (1994), 68 Ohio St.3d 181, 183–184, 624 N.E.2d 1048. First, the court must determine whether the state's long-arm statute and the applicable Civil Rule confer personal jurisdiction. Id. Then, the court must decide whether granting jurisdiction under the statute and rule would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution. Id.

{¶ 19} Pursuant to R.C. 2307.382(A), Ohio's long-arm statute, Ohio courts may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's "(1) [t]ransacting any business in this state; * * * (3) [c]ausing tortious injury by an act or omission in this state; * * * [or] (6) [c]ausing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state."

{¶ 20} Similarly, Civ.R. 4.3(A) permits service of process outside of this state upon a nonresident of this state "who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's: (1) [t]ransacting any business in this state; * * * (3) [c]ausing tortious injury by an act or omission in this state; * * * [or] (9) [c]ausing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when the person to be served might.reasonably have expected that some person would be injured by the act in this state."

{¶ 21} Hall argues that Tucker transacted business in Ohio by (1) purchasing Tambourine in Ohio, (2) transferring and subsequently enforcing the New Jersey judgment in Ohio, and (3) causing tortious injury in this state by an act outside of Ohio, committed with the purpose of injuring Hall in Ohio. He claims that the trial court's personal jurisdiction over Tucker is specific to claims arising out of the sale and Tucker's enforcement of the foreign judgment in Ohio courts.

{¶ 22} In contrast, Tucker argues that contacts with Ohio "are limited to the purchase of a horse and the subsequent ministerial filing and enforcement of a foreign judgment in the Jackson County Court of Common Pleas." Tucker concedes that he purchased the horse in Ohio and that he used the procedures enumerated in Ohio's version of the Uniform Enforcement of Foreign Judgments Act ("UEFJA"), as codified in R.C. 2329.021 through 2329.027. However, Tucker urges us to find that his use of the Ohio court system to enforce his judgment did not constitute a purposeful availing of the laws of this state and, therefore, hold that the trial court did not obtain personal jurisdiction over him.

{¶ 23} The Ohio Supreme Court has previously recognized that the word "transact" used in the long-arm statute is broader that the term "contract" and encompasses "to carry on business" and "to have dealings" in its meaning. *Goldstein v. Christiansen* (1994), 70 Ohio St.3d 232, 236, 638 N.E.2d 541. Further, the court has stated that the statute and rule "are very broadly worded and permit jurisdiction over nonresident defendants who are *transacting any* business in Ohio." (Emphasis sic.) *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.* (1990), 53 Ohio St.3d 73, 75, 559 N.E.2d 477. Because the phrase "[t]ransacting any business" is so broad, cases interpreting the statute and rule are particularly fact-dependent, " ' "thus rendering any generalization unwarranted." ' " *Goldstein*, 70 Ohio St.3d at 236, 638 N.E.2d 541, quoting *U.S. Sprint*, 68 Ohio St.3d at 185, 624 N.E.2d 1048, quoting 22 Ohio Jurisprudence 3d (1980) 430, Courts and Judges, Section 280.

{¶ 24} Based upon the Ohio Supreme Court's broad interpretation of the phrase "[t]ransacting any business" in Ohio's long-arm statute, we conclude that Tucker's actions, both in purchasing Tambourine in Ohio and in using the Jackson

County Court of Common Pleas to enforce the New Jersey judgment, satisfy the requirements of R.C. 2307.382(A) and Civ.R. 4.3(A)(1).

{¶ 25} Having determined that Hall has made a prima facie showing that Tucker transacted business in the state of Ohio as contemplated by Ohio's long-arm statute, we must now determine whether the exercise of personal jurisdiction over Tucker comports with the Due Process Clause of the Fourteenth Amendment. See, e.g., *Goldstein*, 70 Ohio St.3d at 235, 638 N.E.2d 541.

{¶ 26} Due process mandates that a court exercise jurisdiction only if the defendant has sufficient minimum contacts with the state that summoning the party to Ohio would not offend the "traditional notions of fair play and substantial justice." *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95. In determining whether a defendant has the necessary minimum contacts with the forum, a court should consider "the number of contacts, the nature and quality of the contacts, the source and connection between the cause of action and the contacts, the interest of the forum state and the convenience of the parties." *M & W Contractors, Inc. v. Arch Mineral Corp.* (S.D.Ohio, 1971), 335 F.Supp. 972, 973–974. Furthermore, R.C. 2307.382(C) provides, "When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him." Thus, only causes of action arising out of the specific minimum contacts giving rise to the court's exercise of personal jurisdiction are cognizable.

{¶ 27} The United States Supreme Court has held that where a corporation "purposefully avail[s] itself of the privilege of conducting activities within the forum State," it is subject to suit within that state, with respect to matters related to its activities. *Hanson v. Denckla* (1958), 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283. The constitutional touchstone is whether the nonresident defendant purposely established contacts in the forum state such that the defendant should reasonably anticipate being haled into court in that state. *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528; *World–Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490.

{¶ 28} Here, Tucker chose to purchase a horse from Hall, an Ohio resident. When that purchase proved to be unsatisfactory, he obtained a judgment against Hall in the United States District Court of New Jersey. Then Tucker elected to file his foreign judgment in Jackson County, Ohio, pursuant to the UEFJA. After causing the Jackson County Clerk of Courts to issue a certificate of judgment for liens upon the lands and tenements of both Hall and Maple Valley Farm, Inc., Tucker successfully collected $91,135.02 from Hall.

{¶ 29} R.C. 2329.022 provides: "A copy of any foreign judgment authenticated in accordance with section 1738 of Title 28 of the United States Code, 62 Stat. 947 (1948), may be filed with the clerk of any court of common pleas. The clerk shall treat the foreign judgment in the same manner as a judgment of a court of common pleas. A foreign judgment filed pursuant to this section has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a court of common pleas and may be enforced or satisfied in same manner as a judgment of a court of common pleas."

{¶ 30} The UEFJA fails to address the issue whether the filing of the foreign judgment confers personal jurisdiction over the plaintiff in other proceedings. In contrast, the Uniform Interstate Family Support Act ("UIFSA"), R.C. 3115.01 et seq., which provides for the enforcement of out-of-state child-support orders against obligors who reside in Ohio, specifically addresses the issue of personal jurisdiction. R.C. 3115.25(A) provides: "Participation by a plaintiff in a proceeding before a responding tribunal pursuant to sections 3115.01 to 3115.59 of the Revised Code, whether in person, by private attorney, or through services provided by the support enforcement agency, does not confer personal jurisdiction over the plaintiff in another proceeding." This legislative grant of limited immunity demonstrates the General Assembly's understanding that, generally, the use of Ohio's courts to enforce a foreign judgment confers personal jurisdiction over the person seeking such enforcement.

{¶ 31} Therefore, we conclude that Tucker should reasonably have anticipated being haled into court in Ohio with regard to his purchase of Tambourine and his actions to enforce the New Jersey judgment in the Jackson County Court of Common Pleas. Moreover, based upon the factual allegations in Hall's complaint, we find that his request for the equitable relief of restitution and his causes of action for conversion and abuse of process are intimately related to Tucker's contacts with this state. The state of Ohio has an inherent interest in resolving a suit brought by one of its residents. Accordingly, we conclude that the trial court's exercise of personal jurisdiction over Tucker will not offend the "traditional notions of fair play and substantial justice."

{¶ 32} In sum, we hold that (1) Hall has made a prima facie showing that Tucker transacted business in the state of Ohio as contemplated by Ohio's long-arm statute, and (2) the trial court's exercise of personal jurisdiction over Tucker comports with the Due Process Clause of the Fourteenth Amendment. Therefore, we hold that the trial court erred in dismissing Hall's claims for restitution and conversion for lack of personal jurisdiction over Tucker. Accordingly, we sustain Hall's first assignment of error.

### III

{¶ 33} In his second assignment of error, Hall argues that the trial court erred in granting summary judgment to Tucker on Hall's abuse-of-process claim. Specifically, he contends that a genuine issue of material fact exists with regard to Tucker's intent to pervert the legal process to achieve an ulterior purpose for which the system was not designed.

{¶ 34} Summary judgment is appropriate when the court finds that (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to only one conclusion and that conclusion is adverse to the nonmoving party. Civ.R. 56. See *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46; *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 411, 599 N.E.2d 786.

{¶ 35} In ruling upon a motion for summary judgment, we must construe the record and all inferences therefrom in the opposing party's favor. *Doe v. First United Methodist Church* (1994), 68 Ohio St.3d 531, 535, 629 N.E.2d 402. We independently review the record to determine whether summary judgment is appropriate. "Accordingly, we afford no deference to the trial court's decision in answering that legal question." *Morehead,* 75 Ohio App.3d at 412, 599 N.E.2d 786. See, also, *Schwartz v. Bank One, Portsmouth, N.A.* (1992), 84 Ohio App.3d 806, 809, 619 N.E.2d 10.

{¶ 36} The burden of showing that no genuine issue of material fact exists falls upon the party requesting summary judgment. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 294, 662 N.E.2d 264, citing *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. The moving party bears this burden even for issues for which the nonmoving party may bear the burden of proof at trial. Id. "However, once the movant has supported his motion with appropriate evidentiary materials, the nonmoving party may not rely upon the allegations and/or denials in his pleadings. * * * He must present evidentiary materials showing that a material issue of fact does exist." *Morehead,* 75 Ohio App.3d at 413, 599 N.E.2d 786.

{¶ 37} Here, Hall argues that Tucker initiated collection proceedings against him in Ohio in proper form and with probable cause but that Tucker perverted the proceedings by (1) collecting a full refund of his purchase price plus expenses *and* (2) keeping the horse. In contrast, Tucker argues that Hall can produce no evidence raising a genuine issue of material fact that Tucker perverted the legal process to achieve an ulterior purpose. To support his contention, Tucker submitted his own affidavit, stating that he "did not attempt to pervert proceedings in the Jackson County Court of Common Pleas" and that he "did not intend

to accomplish an ulterior purpose in the Jackson County Court of Common Pleas." While it may be impossible for Hall to demonstrate Tucker's true, subjective intent in prosecuting the Ohio collection actions through direct evidence like a confession, we may, nevertheless, infer Tucker's intent from his actions. *Doyle v. Fairfield Machine Co., Inc.* (1997), 120 Ohio App.3d 192, 208, 697 N.E.2d 667.

{¶ 38} In support of his argument that Tucker acted with an ulterior purpose, Hall submitted verified copies of correspondence between the various attorneys representing the parties. When that series of correspondence is viewed in a light most favorable to Hall, it tends to demonstrate that as early as September 1999, Tucker sought to collect the refund of his purchase price and damages as awarded in the New Jersey judgment and to keep Tambourine—offering Hall a $10,000 credit against the damage award in exchange for the horse. Additionally, the letters tend to demonstrate that despite repeated requests from Hall's counsel, Tucker or his representatives refused to provide a payoff figure that recognized Hall's desire to receive the horse pursuant to the terms of the New Jersey judgment.

{¶ 39} Furthermore, despite Tucker's claims that Hall simply never made the necessary arrangements to get the horse, the verified correspondence submitted by Hall tends to demonstrate that Hall's counsel specifically requested that Tucker's representative provide information regarding Tambourine's whereabouts, the name and telephone number of the person who would surrender custody of the horse, and the hours during which he could retrieve his property. This evidence, coupled with the fact that more than four years after receiving the full amount of his judgment, Tucker still maintains possession of the horse, raises a genuine issue of material fact as to whether Tucker perverted the legal process to achieve the ulterior purpose of keeping the horse or compelling Hall to part with her for less than her true value.

{¶ 40} Based upon the foregoing, we conclude that Hall demonstrated that a genuine issue of material fact exists with regard to Tucker's intent to pervert the legal process to achieve an ulterior purpose for which it was not designed. Accordingly, we sustain Hall's second assignment of error.

## IV

{¶ 41} In his first assignment of error, Tucker contends that Hall's request for the equitable relief of restitution and his causes of action for conversion and abuse of process constitute impermissible collateral attacks upon the judgment of the United States District Court of New Jersey. Specifically, Tucker argues that Hall's claims constitute an attempt to enforce, clarify, or modify the previous court's judgment and cast doubt upon the validity of that

court's actions. Because Hall's action in the Jackson County Court of Common Pleas involves the identical underlying subject matter and the identical parties involved in the prior action, Tucker argues that the doctrine of res judicata bars Hall's claims.

{¶ 42} "A 'collateral attack' on a judgment may be defined as an attempt to avoid, defeat, or evade judgment, or to deny its force and effect, in some judicial proceeding not provided by law for the express purpose of reviewing it." 63 Ohio Jurisprudence 3d (2003) 285, Judgments, Section 471. "[W]here a court of record has jurisdiction over the subject matter before it and renders a judgment, such judgment may not be collaterally impeached. So long as it stands unreversed, it remains conclusive as to the matter decided." *State ex rel. Schneider v. Brewer* (1951), 155 Ohio St. 203, 205, 44 O.O. 170, 98 N.E.2d 2.

{¶ 43} The doctrine of res judicata prohibits the relitigation of issues previously litigated and decided. *Hicks v. De La Cruz* (1977), 52 Ohio St.2d 71, 6 O.O.3d 274, 369 N.E.2d 776. There are two forms of res judicata: issue preclusion and claim preclusion.

{¶ 44} Issue preclusion, or collateral estoppel, prevents the relitigation in a second action of *an issue that has been actually and necessary litigated and determined* in a prior action which was based on a different cause of action. *Trautwein v. Sorgenfrei* (1979), 58 Ohio St.2d 493, 495, 12 O.O.3d 403, 391 N.E.2d 326. Claim preclusion holds that a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action. *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 381, 653 N.E.2d 226. " '[A]n existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or might have been litigated in a first lawsuit.' " *Holzemer v. Urbanski* (1999), 86 Ohio St.3d 129, 133, 712 N.E.2d 713, quoting *Rogers v. Whitehall* (1986), 25 Ohio St.3d 67, 69, 25 OBR 89, 494 N.E.2d 1387; *Natl. Amusements, Inc. v. Springdale* (1990), 53 Ohio St.3d 60, 62, 558 N.E.2d 1178; *Grava*, 73 Ohio St.3d at 382, 653 N.E.2d 226. Thus, even where the cause of action in a subsequent suit is different, a prior judgment may still affect the outcome of the second suit. *Trautwein*, 58 Ohio St.2d at 495, 12 O.O.3d 403, 391 N.E.2d 326.

{¶ 45} In his complaint, Hall asserts (1) a request for the equitable relief of restitution, (2) a cause of action for conversion, and (3) a cause of action for abuse of process. Although his request for restitution and his claims for conversion and abuse of process relate to Tucker's underlying purchase of Tambourine from Hall, they all arise, more specifically, out of Tucker's actions *after* the New Jersey District Court rendered its judgment in Tucker's rescission action. Each

claim arises directly out of Tucker's successful efforts to enforce the New Jersey judgment in the Jackson County Court of Common Pleas and his corresponding failure to return Tambourine to Hall in compliance with that judgment. The New Jersey judgment is now in effect a judgment of the Jackson County Court of Common Pleas, because of Tucker's own efforts to enforce it in that court. R.C. 2329.022.

{¶ 46} Hall's request for the equitable relief of restitution is, in essence, an effort to equitably deny Tucker the right to enforce the underlying judgment based upon Tucker's failure to abide by its terms. Specifically, Hall seeks the return of the money he previously paid to satisfy the underlying judgment on the ground that Tucker was unjustly enriched by the receipt of the money while he continues to retain possession of Tambourine. "Such equitable remedy is not a proceeding in rem, and does not assail the court in which the judgment was rendered, or seek to change, modify, suspend, or vacate the judgment, but is a proceeding in personam against a party to the judgment, seeking to deprive him of the benefit of the judgment by enjoining him from enforcing it." *Kundert v. Kundert* (1927), 24 Ohio App. 342, 348, 156 N.E. 237.

{¶ 47} Similarly, Hall's claims for conversion and abuse of process do not seek to avoid, defeat, or evade the prior judgment. Hall could not have litigated his claim for conversion in the prior action because the New Jersey judgment conditioned Hall's right to possession of Tambourine upon his payment of Tucker's monetary judgment. Thus, Tucker's possession of Tambourine was not wrongful until Hall actually paid the monetary judgment. Likewise, the claim for abuse of process arises from events occurring during the course of the underlying litigation. *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.* (1994), 68 Ohio St.3d 294, 299, 626 N.E.2d 115. The Ohio Supreme Court has recognized that abuse of process is not a compulsory counterclaim that a party must join in the underlying litigation. Id. at paragraph two of the syllabus.

{¶ 48} Because Hall could not have litigated his request for restitution or his causes of action for conversion or abuse of process in the previous actions, the doctrine of claim preclusion will not bar them here. Furthermore, because neither his request for restitution nor his causes of action challenge the validity of the New Jersey judgment or otherwise seek to relitigate a claim that was actually and directly litigated in the prior action, the doctrine of issue preclusion will not act as a bar. Accordingly, we overrule Tucker's first cross-assignment of error.

V

{¶ 49} In Tucker's second assignment of error, he contends that the trial court did not have subject-matter jurisdiction over Hall's claims. He also

contends that Hall could properly bring his action in a New Jersey court, be it a United States district court or a state court. In his brief argument, Tucker appears to rely upon the fact that the first judgment originated in New Jersey and that the horse is in New Jersey. Yet Tucker cites no legal authority to support his conclusion that the trial court lacks subject-matter jurisdiction over Hall's claims. We may disregard an assignment of error pursuant to App.R. 12(A)(2) if an appellant fails to cite to any legal authority in support of an argument as required by App.R. 16(A)(7). *State v. Martin* (July 12, 1999), 12th Dist. No. CA99–01–003, 1999 WL 527836, citing *Meerhoff v. Huntington Mtge. Co.* (1995), 103 Ohio App.3d 164, 169, 658 N.E.2d 1109. However, a party cannot waive subject-matter jurisdiction. *Shawnee Twp. v. Allen Cty. Budget Comm.* (1991), 58 Ohio St.3d 14, 15, 567 N.E.2d 1007, citing *Painesville v. Lake Cty. Budget Comm.* (1978), 56 Ohio St.2d 282, 284–285, 10 O.O.3d 411, 383 N.E.2d 896. Therefore, we will address the trial court's subject-matter jurisdiction.

{¶ 50} The Ohio Supreme Court has previously noted: " 'The rule is firmly established that the Court of Common Pleas is a court of general jurisdiction and, as such, possesses the authority initially to determine its own jurisdiction over both the person and the subject matter in an action before it * * *.' " *State ex rel. Detroit & T.S.L. Rd. Co. v. Court of Common Pleas of Lucas Cty.* (1967), 11 Ohio St.2d 193, 194, 40 O.O.2d 172, 228 N.E.2d 313, quoting *State ex rel. Mansfield Tel. Co. v. Mayer* (1966), 5 Ohio St.2d 222, 223, 34 O.O.2d 428, 215 N.E.2d 375, overruled on other grounds, *Dept. of Adm. Serv. v. State Emp. Relations Bd.* (1990), 54 Ohio St.3d 48, 562 N.E.2d 125. We review the determination of subject-matter jurisdiction de novo, without any deference to the trial court's determination. *Burns v. Daily* (1996), 114 Ohio App.3d 693, 701, 683 N.E.2d 1164.

{¶ 51} Here, Tucker admits that he filed the New Jersey judgment in the Jackson County Court of Common Pleas pursuant to Ohio's version of the UEFJA. As we have previously noted, R.C. 2329.022 provides that once an authenticated copy of a foreign judgment is filed with the clerk of any court of common pleas, it "has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a court of common pleas and may be enforced or satisfied in same manner as a judgment of a court of common pleas." Thus, to the extent that Hall's request for restitution and causes of action for conversion and abuse of process seek to enforce the New Jersey judgment, the trial court has subject-matter jurisdiction to hear them.

{¶ 52} Additionally, Section 4(B), Article IV of the Ohio Constitution provides: "The courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters and such powers of review of

proceedings of administrative officers and agencies as may be provided by law." R.C. 2305.01 provides: "The court of common pleas has original jurisdiction in all civil cases in which the sum or matter in dispute exceeds the exclusive original jurisdiction of county courts * * *." Currently, Ohio municipal courts have original jurisdiction "only in those cases in which the amount claimed by any party, or the appraised value of the personal property sought to be recovered, does not exceed fifteen thousand dollars." Accordingly, the Jackson County Court of Common Pleas may exercise subject-matter jurisdiction over Hall's claims if the sum or matter in dispute exceeds $15,000.

{¶ 53} Hall does not plainly state the dollar value of his claims in his complaint. But when determining its own subject-matter jurisdiction, a trial court is not limited to the allegations in the complaint but has authority to consider any pertinent evidentiary materials. *Nemazee v. Mt. Sinai Med. Ctr.* (1990), 56 Ohio St.3d 109, 111, 564 N.E.2d 477, citing *Southgate Dev. Corp. v. Columbia Gas Transm. Corp.* (1976), 48 Ohio St.2d 211, 2 O.O.3d 393, 358 N.E.2d 526, paragraph one of the syllabus.

{¶ 54} Here, Hall's claims for conversion and abuse of process revolve around Tucker's failure to return Tambourine and her foals after Hall paid Tucker's monetary judgment in full. Hall's complaint plainly reflects that Hall refused to accept $10,000 in lieu of Tambourine's return. Additionally, Tucker's supplemental answers to Hall's first set of interrogatories indicate that one of the three disputed foals sold at public auction in October 2001 for $12,000. Hence, the record contains sufficient evidence to support a finding that the trial court has subject-matter jurisdiction over Hall's claims for conversion and abuse of process.

{¶ 55} Tucker argues that the trial court lacked subject-matter jurisdiction based upon the fact that Tambourine is not physically present in the state of Ohio. However, Hall's action is not a proceeding in rem. As we found above, Hall alleged sufficient facts in his complaint for the trial court to exercise personal jurisdiction over Tucker. Once a court has personal jurisdiction over a defendant, it may impose a valid judgment imposing a personal obligation or duty in favor of the plaintiff. *Woods v. Woods* (Dec. 15, 1982), Lawrence App. No. 1588, 1982 WL 3609, at * 3, citing *Pennoyer v. Neff* (1877), 95 U.S. 714, 732–733, 24 L.Ed. 565; *Internatl. Shoe,* 326 U.S. at 316, 66 S.Ct. 154, 90 L.Ed. 95. Thus, neither the horse nor Tucker's real or personal property need be present within the state to confer jurisdiction upon the court.[1]

---

1. However, the absence of the horse or Tucker's property from the jurisdiction of the trial court will undoubtedly limit the trial court's ability to execute any judgment it may render.

{¶ 56} Because we find that the record contains sufficient evidence to support a finding that the trial court has subject-matter jurisdiction over Hall's request for restitution and claims for conversion and abuse of process, we overrule Tucker's second assignment of error.

## VI

{¶ 57} In conclusion, construing the allegations in Hall's complaint most strongly in his favor, we find that Hall's complaint alleges sufficient facts to permit reasonable minds to find that the trial court has personal jurisdiction over Tucker based upon his conducting business in Ohio. Additionally, we conclude that the trial court's exercise of personal jurisdiction over Tucker comports with the Due Process Clause of the Fourteenth Amendment. Accordingly, we sustain Hall's first assignment of error.

{¶ 58} Next, we find that Hall has sufficiently demonstrated the existence of a genuine issue of material fact regarding Tucker's intent to pervert the legal process to achieve an ulterior purpose for which it was not designed. Thus, we hold that the trial court improperly granted summary judgment to Tucker upon Hall's abuse-of-process claim. Accordingly, we sustain Hall's second assignment of error.

{¶ 59} Next, we hold that Hall's request for restitution and causes of action for conversion and abuse of process are not collateral attacks upon the prior judgment and are not barred by the doctrine of res judicata. Accordingly, we overrule Tucker's first assignment of error.

{¶ 60} Finally, based upon Tucker's filing the New Jersey judgment in the Jackson County Court of Common Pleas pursuant to the UEFJA, we conclude that the trial court possesses subject-matter jurisdiction to enforce the New Jersey judgment. To the extent that Hall's claims involve matters beyond the enforcement of the New Jersey judgment, we hold that the trial court has subject-matter jurisdiction pursuant to R.C. 2305.01 because the sum or matter in dispute exceeds $15,000. Accordingly, we overrule Tucker's second assignment of error.

{¶ 61} Based upon the foregoing, we reverse the judgment of the trial court and remand this cause for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

ABELE, P.J., and HARSHA, J., concur in judgment only.