[Cite as *Columbus v. Cort*, 2020-Ohio-1467.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| City of Columbus, | : | |
| Plaintiff-Appellee, | : | No. 19AP-425 |
| | | (M.C. No. 2019CRB-7743) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Melroy Cort, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on April 14, 2020

**On brief**: *Zachary M. Klein*, City Attorney, *Bill R. Hedrick*, and *Orly Ahroni*, for appellee.

**On brief**: *Melroy Cort*, pro se.

APPEAL from the Franklin County Municipal Court

BROWN, J.

{¶ 1}  Melroy Cort, defendant-appellant, appeals from a judgment of the Franklin County Municipal Court in which the jury found appellant guilty of obstructing official business, a violation of Columbus City Code ("C.C.C.") 2321.31 and a second-degree misdemeanor, and the trial court, pursuant to a bench trial, found appellant guilty of possession of a controlled substance, a violation of R.C. 2925.11 and a minor misdemeanor.

{¶ 2}  On April 20, 2019, Officers Nathan Schwartz and Dean Prantl of the Columbus Police Department were on patrol. At approximately 2:41 a.m., the officers noticed a vehicle parked in front of a business with its lights on. The officers parked their cruiser and walked to the vehicle in the parking lot. When Officer Schwartz approached the driver's side of the vehicle, he observed appellant with a marijuana cigarette ("blunt") in his

hand. When the officer asked him what was going on, appellant stated he was rolling his blunt and trying to go home.

{¶ 3} After a discussion about the legality of marijuana, Officer Schwartz asked appellant to exit the vehicle so they could pat him down and search the vehicle. Officer Schwartz attempted to open the door twice, but appellant pulled the door back both times. Officer Schwartz then had to use force to open the door.

{¶ 4} Appellant was charged with possession of a controlled substance and obstructing official business. On June 17, 2019, a jury trial was held on the charge of obstructing official business and a bench trial on the charge of possession of a controlled substance. On June 19, 2019, appellant was found guilty on both charges. The trial court sentenced appellant to a fine of $200, plus court costs. Appellant appeals, pro se, asserting the following assignment of error, as set forth in his statement of assignments of error:

> The Lower court which was Franklin County Municipal Court errored in its conviction of obstruction and Drug Abuse charges. This conviction was against the manifest weight found in the evidence available and supporting witnesses had court not errored in its presentation of the case and failure to allow Mr. Cort the defendant, due process in the presentation of its case. The consensual encounter was in violation of the Right to Privacy and illegal Search and Seizure of the rights of Private Citizens on private property. Also, the Discriminatory behavior of the Police officers failure to treat Mr. Cort different from Kory Ellison also, and the excessive force used on Mr. Cort and the failure to provide Mr. Cort with his wheelchair upon their illegal search of the vehicle. The totality of the circumstances was never presented to the courts. The arrest itself was illegal. In Arizona vs. Grant 129 Supreme Court 1710 (2009). "persons arrested without a warrant are required to be brought before a competent authority shortly after arrest for a prompt Judicial determination of probable cause.

(Sic passim.)

{¶ 5} Initially, appellant's brief has numerous deficiencies. In his 19-page brief, appellant cites only one case. An appellant must support the assignments of error with citation to legal authority. *State v. Hubbard*, 10th Dist. No. 11AP-945, 2013-Ohio-2735, ¶ 34 (citing App.R. 16(A)(7) and 12(A)(2)). In addition, App.R. 16(A)(7) requires "[a]n argument containing the contentions of the appellant with respect to each assignment of

error presented for review and the reasons in support of the contentions." However, rather than argue assignments of error individually, appellant sets forth a single, multi-issue assignment of error and then argues "issues" in the argument section of the brief, at least one of which is not included in the lengthy assignment of error. We are empowered only to determine appeals on the assignments of error set forth in the briefs under App.R. 16. *See* App.R. 12(A)(1)(b). We do not determine appeals based on mere arguments and may dismiss any arguments not specifically included in an assignment of error. *See Evans v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 18AP-713, 2019-Ohio-3788, ¶ 11, fn. 2, citing App.R. 12(A)(1)(b); *Bonn v. Bonn*, 10th Dist. No. 12AP-1047, 2013-Ohio-2313, ¶ 9.

{¶ 6} In the present case, appellant's assignment of error basically raises three errors: (1) the conviction for obstructing official business was against the manifest weight of the evidence, (2) the trial court failed to allow appellant due process in the calling of witnesses and presentation of his case, and (3) the search and seizure was an illegal warrantless search and in violation of the right to privacy on private property.

{¶ 7} In his brief, appellant raises the following arguments: (1) the officers obtained the evidence pursuant to an illegal search and seizure, (2) with regard to the obstruction of official business verdict, the officers never told him he was under investigation, that they were going to pat him down, and they were going to search his vehicle, (3) at the arraignment, the judge and prosecutor failed to inform him he was also charged with a marijuana charge, (4) the trial court erred when it failed to inform him during the jury trial that the judge, and not the jurors, makes the decision concerning the possession of a controlled substance charge, and (5) the trial court found appellant guilty of possession of a controlled substance without allowing him to present a defense against the charge.

{¶ 8} Comparing the errors raised in the assignment of error against the arguments raised in the argument section of the brief, the only argument appellant did not raise as part of his assignment of error was argument three that, at the arraignment, the judge and prosecutor failed to inform him that he was also charged with a marijuana charge. Thus, we cannot address that argument.

{¶ 9} As for the remaining arguments, appellant first contends the officers obtained the evidence pursuant to an illegal search and seizure. Appellant asserts he had a legal and justifiable right to be on the private property where the encounter took place. He

argues that, despite the reasons cited in the police report for deciding to investigate his parked vehicle, they always sit at the gas station adjacent to the business in front of which appellant's car was parked; they are familiar with the owner of the business, Spencer Freeman; Freeman returned to the business minutes after police approached appellant in his parked car but after some cursing was told to go across the street; the officers knew there had been over 30 cars parked at the business, with people constantly entering and exiting the business, which was not uncommon; and Freeman frequently holds gatherings at the business. Appellant further points out that the vehicle was not parked in a public section of the business; the parking lot is on private property; Freeman owns vehicles that are parked on the property; Freeman was holding a funeral reception at the business at the time of the search; family started gathering at the business at 7:00 p.m.; there were over 100 people in attendance at the reception; Freeman left the premises to drive someone home, leaving appellant and his vehicle on the property; the officers were seen driving past the business repeatedly; and officers were seen parked at the adjacent business watching the activity on the street and at Freeman's business.

{¶ 10} Appellant argues that, if the trial court would have allowed him to present witnesses the second day of trial, one of them would have been Freeman, and Freeman's testimony would have allowed the court to understand the totality of circumstances surrounding the events. Appellant claims there existed no exigent circumstances that would have justified a warrantless search. Appellant asserts he did not give officers permission to search his vehicle.

{¶ 11} Appellant's current search and seizure argument has two major problems. Initially, except for the fact he was attending a funeral reception in the parking lot of a private business at the time of the encounter, none of the evidence or facts appellant outlined above were presented by him at trial and are not part of the record before us. It is well-established a reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter. *Morgan v. Eads*, 104 Ohio St.3d 142, 2004-Ohio-6110, ¶ 13; *State v. Ishmail*, 54 Ohio St.2d 402 (1978), paragraph one of the syllabus; *State v. Oteng*, 10th Dist. No. 18AP-58, 2018-Ohio-3138, ¶ 25, quoting *State v. White*, 10th Dist. No. 14AP-160, 2015-Ohio-5365, ¶ 11. Thus, appellate courts are limited by the record before them in considering the

merits of an appeal. *Brown v. Cleveland*, 66 Ohio St.2d 93, 98 (1981). Therefore, here, except for the fact that appellant was attending a funeral reception in the parking lot of a private business at the time of the encounter, we cannot consider the factual allegations appellant raises above and bases his error upon.

{¶ 12} More importantly, the record reflects appellant never filed a motion to suppress the evidence. A motion to suppress is the proper method for excluding evidence obtained as a result of police conduct that results in a constitutional violation. *State v. Daniels*, 8th Dist. No. 93545, 2010-Ohio-3871, ¶ 17; *State v. Freeman*, 8th Dist. No. 92286, 2009-Ohio-5226, ¶ 23. Crim.R. 12(C)(3) requires a defendant file a motion to suppress evidence with the trial court prior to trial, and failure to do so "shall constitute waiver of the defenses or objections" for purposes of trial. Crim.R. 12(H). Therefore, in the present case, appellant waived the right to raise any challenge to the constitutionality of the search and seizure on appeal by failing to file a pretrial motion to suppress. *Daniels* at ¶ 18; *Freeman* at ¶ 24; *State v. Wade*, 53 Ohio St.2d 182, 190 (1978) (appellate court need not consider appellant's assertions of improper search and seizure and illegal arrest where counsel did not file a motion to suppress; constitutional rights may be lost as finally as any others by a failure to assert them at a proper time).

{¶ 13} Despite appellant's failure to file a motion to suppress, we may still review these issues under plain error. *See State v. Sims*, 10th Dist. No. 14AP-1025, 2016-Ohio-4763, ¶ 9, citing *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, ¶ 136, citing *State v. Campbell*, 69 Ohio St.3d 38, 44 (1994) (failing to file motion to suppress illegally obtained evidence waives objections to evidence other than plain error).

{¶ 14} Under Crim.R. 52(B), plain errors affecting substantial rights may be noticed by an appellate court even though they were not brought to the attention of the trial court. To constitute plain error, there must be: (1) an error, i.e., a deviation from a legal rule, (2) that is plain or obvious, and (3) that affected substantial rights, i.e., affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Even if an error satisfies these prongs, appellate courts are not required to correct the error. Appellate courts retain discretion to correct plain errors. *Id.*; *State v. Litreal*, 170 Ohio App.3d 670, 2006-Ohio-5416, ¶ 12 (4th Dist.). Courts are to notice plain error under Crim.R. 52(B) " 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of

justice.' " *Barnes* at 27, quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of syllabus.

{¶ 15} In the present case, appellant does not argue the existence of plain error on appeal. The appellant bears the burden of affirmatively demonstrating error on appeal. App.R. 16(A)(7); *Hubbard* at ¶ 34. Appellant has not met his burden.

{¶ 16} Notwithstanding, even if we were to review the claimed error under a plain-error analysis, we would find it without merit. "In general, '[t]he Fourth Amendment of the United States Constitution, applied to the states through the Fourteenth Amendment, protects persons against unreasonable searches and seizures.' " *State v. Richardson*, 10th Dist. No. 15AP-870, 2016-Ohio-5801, ¶ 18, quoting *State v. Jones*, 9th Dist. No. 12CA010270, 2013-Ohio-2375, ¶ 8. For a search or seizure to be reasonable, it must be based upon probable cause and executed pursuant to a warrant, unless an exception to the warrant requirement applies. *State v. Battle*, 10th Dist. No. 10AP-1132, 2011-Ohio-6661, ¶ 26. Common exceptions to the warrant requirement include consensual encounters between police. *Richardson* at ¶ 18, citing *State v. Massingill*, 8th Dist. No. 92813, 2009-Ohio-6221, ¶ 13.

{¶ 17} The Fourth Amendment is not implicated in all personal encounters between police officers and citizens. *Id.* at ¶ 20, citing *State v. Lenard*, 8th Dist. No. 96975, 2012-Ohio-1636, ¶ 37. A police officer "may lawfully initiate a consensual encounter without probable cause or a reasonable, articulable suspicion of criminal activity." *Id.*, citing *Lenard* at ¶ 38. A consensual encounter occurs when police approach an individual in a public place, engage the individual in conversation and the individual remains free to walk away. A consensual encounter requires no objective justification. *State v. Young*, 10th Dist. No. 14AP-721, 2015-Ohio-2006, ¶ 16. A consensual encounter remains as such even when police ask questions, ask to see identification, or ask to search the individual's belongings, as long as police do not convey a message that compliance with their requests is required. *Id.*

{¶ 18} In contrast, a "seizure" that implicates the Fourth Amendment occurs only when, in view of all the circumstances surrounding the incident, the police, either by physical force or by show of authority, restrain the person's liberty so that a reasonable person would not feel free to decline the police requests and walk away. *Richardson* at ¶ 20. Whether a reasonable person would feel free to leave depends upon the totality of

circumstances in the case. *Id.*, citing *State v. Saunders*, 2d Dist. No. 22621, 2009-Ohio-1273, ¶ 16. Factors indicating that an encounter is not consensual and the person has been seized include: " 'the threatening presence of several officers, the officer's wearing of a uniform, the display of a weapon, the touching of the person, the use of language or a tone of voice conveying that compliance is compelled, and approaching the person in a non-public place.' " *Id.*, quoting *Saunders* at ¶ 16.

{¶ 19} Ohio courts have found police/citizen encounters to be consensual when the "encounter occurs in a public place, the officer asks a few questions and requests some information, and the record is devoid of evidence indicating a display of force or authority that would make a reasonable person believe he or she was not free to decline the officer's requests or otherwise terminate the encounter." *Id.* at ¶ 22, citing *State v. Taylor*, 106 Ohio App.3d 741, 752 (2d Dist.1995). Therefore, an officer may have a consensual encounter when he approaches an individual seated in a parked car and engages in a casual conversation. *See State v. Carter*, 2d Dist. No. 19833, 2004-Ohio-454; *State v. Schwab*, 12th Dist. No. CA2000-07-055 (Jan. 29, 2001) (approaching the occupants of a parked car to ask questions does not constitute a seizure; the fact that the officer shined the spotlight into the car does not change the analysis); *State v. Massey*, 10th Dist. No. 12AP-649, 2013-Ohio-1521 (consensual encounter where the officer approached the car after using her cruiser's spotlight to illuminate it; the car was already parked, and the officer did not activate the cruiser's lights or siren); *State v. Adams*, 10th Dist. No. 18AP-330, 2019-Ohio-1323 (consensual encounter where the officers parked so as not to block the defendant's car, did not activate their lights or siren, and approached the defendant's parked car on both sides).

{¶ 20} In the present case, Officers Schwartz and Prantl testified they observed appellant in a parked vehicle with the headlights on in the parking lot of a business at 2:41 a.m. The area had a recent history of break-ins at local businesses, in houses, and in vehicles. The parking lot was accessible to the public. The officers parked their cruiser on the street, so as not to block appellant's vehicle, and approached appellant's vehicle on foot. When the officers reached appellant's vehicle, they could see appellant holding a blunt, and appellant admitted it was a blunt. They did not have their cruiser lights or sirens activated. There was no evidence they displayed their weapons, blocked appellant's travel, touched

appellant, or ordered him to open his hand. If, in the course of a consensual encounter, police observe contraband in "plain view," the police develop probable cause with respect to that item and may act accordingly. *Adams* at ¶ 13. Based on the totality of the circumstances in this case, we can find no error, plain or otherwise.

{¶ 21} Appellant next argues the trial court's judgment with regard to the obstruction of official business verdict was against the manifest weight of the evidence. When presented with a manifest weight challenge, an appellate court may not merely substitute its view for that of the trier of fact but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *Martin* at 175.

{¶ 22} In conducting a manifest weight review, an appellate court may consider the credibility of the witnesses. *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. However, in conducting such review " 'we are guided by the presumption that the jury, or the trial court in a bench trial, "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." ' " *State v. Kurtz*, 10th Dist. No. 17AP-382, 2018-Ohio-3942, ¶ 18, quoting *Cattledge* at ¶ 6, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). As such, we accord great deference to the trier of fact's determination of witness credibility. *State v. Albert*, 10th Dist. No. 14AP-30, 2015-Ohio-249, ¶ 14. "Mere disagreement over the credibility of witnesses is not a sufficient reason to reverse a judgment on manifest weight grounds." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 25.

{¶ 23} In the present case, appellant argues that, during the period surrounding the obstruction of business charge, he was never told he was under arrest, never informed of his *Miranda* rights, and was never asked permission to search his vehicle. He claims he was

only told that he was now under investigation, they were going to pat him down, and search his vehicle. Appellant asserts that when Officer Schwartz reached for the door handle to open the door, appellant was startled and instinctively reached for the door handle to close it. Appellant claims he thought Officer Schwartz was going to attack him.

{¶ 24} At trial, Officer Schwartz testified to the actions he took, much of it while his body camera video footage was replayed in court. He testified he walked up to appellant's car window and asked him what was going on. Appellant responded that he was rolling his blunt and trying to go home. After the conversation, Officer Schwartz told appellant to turn off the vehicle, he was going to have him exit the vehicle to conduct a pat down search of everyone in the vehicle, and conduct a search of the vehicle. Officer Schwartz testified he tried to open the car door but appellant slammed it shut. The officer attempted to open the door a second time and appellant slammed it shut again. The officer attempted to open it again and had to forcefully pull on the handle to get the door to open. Officer Schwartz stated appellant then refused to assist him in conducting a pat down search.

{¶ 25} During cross-examination, Officer Schwartz admitted he did not tell appellant he was under arrest before trying to open the door. Officer Schwartz stated he asked appellant if he wanted to go to jail before trying to open the door.

{¶ 26} Officer Prantl, who was the officer that approached the passenger side of the vehicle and spoke with the passenger, did not provide any additional testimony relevant to the obstruction of business charge.

{¶ 27} While Officer Schwartz's body camera video footage was replayed for the jury and court, appellant provided testimony regarding the events being viewed. He stated he was cooperative when Officer Schwartz asked him to turn off the vehicle. He stated he was cooperative when the officer told him he was going to have to pat down everyone in the vehicle. He also testified that when the officer told him he was going to have to give him a ticket, he was cooperative. However, appellant testified, when Officer Schwartz told him to put his hands behind his back, he was never told he was under arrest or told what was happening. He stated that if the officer would have told him to get out of the vehicle and made reasonable orders, he would have asked for his wheelchair and gotten out of the vehicle. He stated the officer told him he was going to pat him down but did not give any further instructions to follow. He testified that the officer escalated the situation.

{¶ 28} On cross-examination, appellant admitted that he shut the door on Officer Schwartz, even though the officer had already told him he was going to pat down everyone and search the vehicle. Although he admitted he shut the door on the officer, he stated it was not his intent to prevent the officer from patting him down. He stated he was not given an order and the officer forced his way into the vehicle. He admitted the officer informed him that he was going to pat him down, and he responded that he could pat him down as long as he wanted to.

{¶ 29} Our own review of Officer Schwartz's body camera video footage reveals that Officer Schwartz approached the vehicle and appellant rolled down his window. When asked what was going on, appellant responded he was rolling his blunt. After the officer told appellant that marijuana is illegal in Ohio and confiscated the blunt, appellant engaged the officer in a lengthy but relatively calm conversation about equal protection, California marijuana laws, and the United States Constitution. The officer then asked appellant to turn the vehicle off, which he did. When one of the passengers balked at providing Officer Prantl, who was speaking through the passenger window, her identification, appellant became more visibly agitated as he argued his point that the officer was on private property and harassing him, and he asked the officer to leave the property. The officer then told appellant they were going to pat down everyone in the vehicle, and appellant responded that he could pat them down as long as they wanted to. Appellant then continued to tell the officer to get off the property because it was private property. The officer stated the area was open but appellant repeatedly demanded the officer give him his blunt back and leave the property. The officer stepped back and attempted to open the car door but appellant shut it and continued to tell the officer to get off the property and give him his blunt back. The officer asked appellant if he wanted to go to jail. Appellant continued to tell the officer that it was private property and became increasingly agitated. The officer explained again that the parking lot has open access to the public. Appellant began to yell that it was private property, the officer had no right to be on it, and to give him his blunt back. After appellant asked the officer for his business card, the officer told appellant he was going to get a ticket, to which appellant responded that was fine. The officer then stepped back again and attempted to open the car door. Appellant tried to pull the car door shut while telling the officer he had no business opening his car door, and he was going to take the officer to court.

The officer pulled forcefully on the door and told appellant he was getting out of the car right now as he pulled him out.

{¶ 30} C.C.C. 2321.31 "Obstructing official business" provides, in pertinent part:

> (A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties.

{¶ 31} C.C.C. 2301.22 "Culpable mental states" provides, in pertinent part:

> (A) A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

{¶ 32} We find appellant's conviction for obstructing official business was not against the manifest weight of the evidence. Appellant acted purposely when he intentionally prevented and delayed Officer Schwartz's performance of his authorized removal of him from the vehicle by pulling the door shut twice. Although appellant argues he was startled and thought the officer was going to attack him, appellant never testified to this effect, and the body camera video footage does not suggest this was the case, so the jury would have been well within its discretion to not view the situation as such. Regardless, appellant did not deny that he intended to shut the door to impede Officer Schwartz's actions. Furthermore, Officer Schwartz was engaged in his lawful duties, as we have already determined that in the course of the consensual encounter, he observed appellant's blunt in plain view, thus, developing probable cause and permitting Officer Schwartz to remove appellant to search his person and vehicle. *See State v. Boyd*, 2d Dist. No. 28490, 2020-Ohio-125, ¶ 17 (once an officer sees contraband in plain view inside a vehicle, he or she then has probable cause to believe the vehicle contains other items of contraband and may conduct a warrantless search of the vehicle), citing *State v. Thompson*, 2d Dist. No. 25658, 2013-Ohio-4825, ¶ 13, citing *State v. Pounds*, 2d Dist. No. 21257, 2006-Ohio-3040, ¶ 21; *State v. McConnell*, 2d Dist. No. 2018-CA-97, 2019-Ohio-2838, ¶ 19 (once officer had probable cause, the officer could remove all individuals from the vehicle to perform a

search). Therefore, the trial court's judgment with regard to the obstruction of official business verdict was not against the manifest weight of the evidence.

{¶ 33} Appellant next argues the trial court erred when it failed to inform him during the jury trial that the judge, and not the jurors, would make the decision concerning the possession of a controlled substance charge. Appellant claims the trial court explained the options for court costs, the trial court told prospective jurors of both charges, the prosecutor mentioned marijuana to prospective jurors, and the trial court discussed possession of marijuana at trial, all without explaining that the charges would be tried separately, causing him confusion.

{¶ 34} As explained above, pursuant to App.R. 16(A)(7), appellant must cite legal authority to support his arguments. According to App.R. 12(A)(2), we may disregard an assignment of error if an appellant fails to cite to any legal authority in support of an argument as required by App.R. 16(A)(7). *See, e.g.*, *Hall v. Tucker*, 161 Ohio App.3d 245, 263, 2005-Ohio-2674 (4th Dist.); *In re C.C.*, 10th Dist. No. 04AP-883, 2005-Ohio-5163, ¶ 80. " '[F]ailure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal.' " *Lundeen v. State Med. Bd. of Ohio*, 10th Dist. No. 12AP-629, 2013-Ohio-112, ¶ 16, quoting *Kremer v. Cox*, 114 Ohio App.3d 41, 60 (9th Dist.1996).

{¶ 35} Here, appellant fails to cite any legal authority to support his arguments; thus, we may disregard his claimed error. Nevertheless, the record demonstrates appellant was aware the jury would not be deciding the marijuana charge. On the morning of the second day of trial, the parties engaged in a discussion regarding the content of the jury instructions. Twice during the discussion, the prosecutor stated the jury would not be determining his guilt regarding the possession of a controlled substance; instead, the court would solely make that determination. Appellant participated in the discussion. Thus, appellant was aware the trial court would be determining his guilt regarding the charge of possession of a controlled substance. Therefore, appellant's argument, in this respect, is without merit.

{¶ 36} Appellant's final argument is that the trial court found him guilty of possession of a controlled substance without allowing him to present a defense against the charge. Appellant contends that, while he was trying to present a defense concerning the controlled substance charge, the court referred to his comments as "off-the-cuff testimony"

and would not let him speak further. (Tr. at 75.) However, appellant mischaracterizes the circumstances. The trial court referred to appellant's comments as "off-the-cuff testimony" during the parties' discussion of jury instructions. During the jury instructions discussion, appellant began to talk about Officer Schwartz's actions at the time of the offense, and the trial court warned him that he could not provide testimony at that time, and he should limit his comments to those regarding jury instructions. The trial court directed appellant to discuss any matters with the public defender, who was standing by to assist appellant. Appellant then asked if he could ask the court a question. The court responded in the negative and directed appellant to speak with standby counsel, which he proceeded to do off the record. Therefore, it is clear that at the time the trial court made the "off-the-cuff testimony" comment, appellant was not presenting his defense or offering evidence. Otherwise, the trial court gave appellant the opportunity to cross-examine the prosecution witnesses and testify on his own behalf. Although the trial court prohibited appellant from using certain evidence and calling certain witnesses, the trial court properly did so based on appellant's belated attempt to provide discovery and a list of witnesses to the prosecutor on the second day of trial. Appellant also did not subpoena any of the witnesses, and he improperly sought to recall a witness that had already testified the prior day and whom he had already cross-examined. The trial court properly sustained the objections by the City of Columbus, plaintiff-appellee, to appellant's belated discovery and identification of witnesses. For these reasons, this argument is without merit. Therefore, we overrule appellant's assignment of error.

{¶ 37} Accordingly, we overrule appellant's single assignment of error and affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

LUPER SCHUSTER, J., concurs.
NELSON, J., concurs in judgment only.

NELSON, J., concurring in judgment only.

{¶ 38} I concur in the judgment of this court, but think it relevant to the context of this controversy to note Mr. Cort's uncontested statement at trial that he is a double amputee Iraq war veteran who cannot stand or walk. Because this court's ruling properly addresses only the convictions from which the appeal was taken, nothing in this decision

should be read as commentary on Mr. Cort's protest to us regarding "excessive force used on Mr. Cort and the failure to provide Mr. Cort with his wheelchair * * *." *See* Appellant's Brief at 6.

_____