*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0011p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

RICHARD A. CONN, JR.,

        *Plaintiff-Appellant,*

    *v.*

VLADIMIR ZAKHAROV,

        *Defendant-Appellee.*

No. 10-3526

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 09-00760—Donald C. Nugent, District Judge.

Argued: October 11, 2011

Decided and Filed: January 12, 2012

Before: BATCHELDER, Chief Judge; SILER and COLE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Bruce S. Marks, MARKS & SOKOLOV, LLC, Philadelphia, Pennsylvania, for Appellant. Leonard J. Marsico, McGUIRE WOODS LLP, Pittsburgh, Pennsylvania, for Appellee. **ON BRIEF:** Bruce S. Marks, MARKS & SOKOLOV, LLC, Philadelphia, Pennsylvania, for Appellant. Leonard J. Marsico, McGUIRE WOODS LLP, Pittsburgh, Pennsylvania, for Appellee.

_____

## OPINION

_____

ALICE M. BATCHELDER, Chief Judge. An old Russian proverb states, "If you're afraid of wolves, don't go into the forest." For Appellant Richard A. Conn the proverb might well read, "If you're afraid of the Russian legal system, don't do business in Russia." Conn brought this action against Appellee Vladimir Zakharov for breach of contract, a contract that Conn moved to Russia to perform. Conn chose the Northern

District of Ohio as the forum for the suit because Zakharov owns property there and because Conn believed he would not prevail in a Russian court of law. The district court ruled that it did not have personal jurisdiction under Ohio law and dismissed the case. We **AFFIRM** because under the facts of this case both Ohio law and the Due Process Clause proscribes the district court from finding general personal jurisdiction over Zakharov.

**I.**

The merits of Conn's case against Zakharov are not before this Court, as even Conn admits that the purported contract has no connection to the state of Ohio. Suffice it to say that Conn believes that he came to an agreement with Zakharov in which Conn would gain a fifteen percent share of a proposed venture by Zakharov's company, that Conn moved to Russia to perform on the agreement, that Zakharov later repudiated the agreement, and that Conn moved back to the United States.

More relevant to this appeal is the history that Zakharov—a Russian citizen—has with Ohio. He attended graduate school at Case Western Reserve University in University Heights, Ohio, and graduated with an MBA in 2002. Zakharov and his wife own residential real estate in Pepper Pike, Ohio, that Zakharov apparently spent millions of dollars purchasing and improving. Zakharov owns several vehicles registered in Ohio, maintains a bank account in Ohio, and maintains the Pepper Pike properties year-round. He also spends some time in Ohio each year, ranging from forty days in 2007 to a total of seventeen days in 2008–2009. In 2008, he even spent $10,000 on Christmas decorations at the Pepper Pike residence, according to documents unearthed by Conn.

After returning from Russia, and motivated by Zakharov's property ownership in Ohio, Conn brought this action in the United States District Court for the Northern District of Ohio, claiming breach of contract and seeking an accounting for the value of a fifteen percent share of the Russian venture. Zakharov moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, but also under Rules 12(b)(2) and 12(b)(6) for *forum non conveniens* and

failure to state a claim, respectively.  After completion of discovery on the personal jurisdiction issue, and after "exhaustive" briefing of the issues by the parties, the district court granted Zakharov's motion to dismiss for lack of personal jurisdiction.[1]  In essence, the district court held that Zakharov was not an Ohio resident, that he was not served with process in a manner that automatically confers personal jurisdiction, that Ohio law did not recognize general jurisdiction over non-residents such as Zakharov, and that Ohio's long-arm statute did not confer personal jurisdiction over Zakharov.  Conn filed a timely appeal to this Court.

## II.

"A federal court sitting in diversity may not exercise jurisdiction over a defendant unless courts of the forum state would be authorized to do so by state law—and any such exercise of jurisdiction must be compatible with the due process requirements of the United States Constitution." *Int'l Techs. Consultants v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997) (citation omitted).  Deciding whether jurisdiction exists is not an idle or perfunctory inquiry; due process demands that parties have sufficient contacts with the forum state so that it is fair to subject them to jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ("[T]he Due Process Clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." (internal quotation marks and citations omitted)).  The court's jurisdiction accordingly extends only to those parties who have in some fashion placed themselves in the hands of the tribunal. *See, e.g.*, *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 150 (6th Cir. 1997) ("To be subject to *in personam jurisdiction* . . . a defendant must purposefully avail [ ] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (internal quotation marks and citation omitted) (alteration in the original)).  Practically speaking, plaintiffs always concede personal jurisdiction,

---

[1]The district court did not address Zakharov's *forum non conveniens* or failure-to-state-a-claim arguments.  Because the district court does not have personal jurisdiction over Zakharov, we will not consider these arguments.

so the inquiry is typically restricted to defendants; because defendants who reside in the forum state will always be subject to the personal jurisdiction of the court, the inquiry is in most cases further restricted to non-resident defendants.

The plaintiff bears the burden of establishing through "specific facts" that personal jurisdiction exists over the non-resident defendant, and the plaintiff must make this demonstration by a preponderance of the evidence. *See Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 & n.3 (6th Cir. 2006); *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). But where, as here, the defendant has moved to dismiss the case under Rule 12(b)(2) for lack of personal jurisdiction and the district court rules on the motion without an evidentiary hearing, the plaintiff need only make a "prima facie" case that the court has personal jurisdiction. *Kroger*, 437 F.3d at 510. In this procedural posture, we do not weigh the facts disputed by the parties but instead consider the pleadings in the light most favorable to the plaintiff, although we may consider the defendant's undisputed factual assertions. *See Kerry Steel*, 106 F.3d at 153; *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261–62 (6th Cir. 1996). But also where, as here, "the plaintiff has received all of the discovery it sought with respect to personal jurisdiction and there does not appear to be any real dispute over the facts relating to jurisdiction," the prima facie "proposition loses some of its significance." *Euroglas S.A.*, 107 F.3d at 391.

We review *de novo* a district court's dismissal of the case under Rule 12(b)(2) for lack of personal jurisdiction. *See, e.g.*, *Kroger*, 437 F.3d at 510. Accordingly, we will not conclude that the district court in Ohio has personal jurisdiction over Zakharov unless Conn presents a prima facie case that: (1) jurisdiction is proper under a long-arm statute or other jurisdictional rule of Ohio, the forum state; and (2) the Due Process Clause also allows for jurisdiction under the facts of the case. *See, e.g.*, *CompuServe*, 89 F.3d at 1262. Of course, if jurisdiction is not proper under the Due Process Clause it is unnecessary to analyze jurisdiction under the state long-arm statute, and vice-versa. *See Brunner v. Hampson*, 441 F.3d 457, 467 (6th Cir. 2006) (holding that where the plaintiff cannot show jurisdiction under the Ohio long-arm statute a Due Process analysis

is unnecessary); *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721, 724 (6th Cir. 2000) (dismissing for lack of personal jurisdiction solely on Due Process grounds).

Under Ohio law, personal jurisdiction over non-resident defendants is available only if (1) the long-arm statute confers jurisdiction and (2) jurisdiction is proper under the Federal Due Process Clause. *See Kauffman Racing Equip., L.L.C. v. Roberts*, 930 N.E.2d 784, 790 (Ohio 2010); *Goldstein v. Christiansen*, 638 N.E.2d 541, 543 (Ohio 1994). Unlike other jurisdictions, Ohio does not have a long-arm statute that reaches to the limits of the Due Process Clause, and the analysis of Ohio's long-arm statute is a particularized inquiry wholly separate from the analysis of Federal Due Process law. *Compare Goldstein*, 638 N.E.2d at 545 & n.1 (holding that Ohio's long-arm statute does not reach to limits of the Due Process Clause), *and Brunner*, 441 F.3d at 465 (recognizing same), *with Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1273 (6th Cir. 1998) (noting that because Kentucky's long-arm statute reaches to the limit of the Constitution the only issue is whether jurisdiction "is within the requirements of due process"), *and Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005) (affirming that Tennessee's long-arm statute is "coterminous" with Due Process). Ohio's long-arm statute grants Ohio courts personal jurisdiction over a non-resident if his conduct falls within the nine bases for jurisdiction listed by the statute. *See* OHIO REV. CODE ANN. § 2307.382(A), (C) (1988). The statute makes clear that "[w]hen jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against" the non-resident defendant.[2] § 2307.382(C).

---

[2]Under Section 2307.382(A), the bases for jurisdiction are:

(1) Transacting any business in this state;
(2) Contracting to supply services or goods in this state;
(3) Causing tortious injury by an act or omission in this state;
(4) Causing tortious injury . . . by an act or omission outside this state . . . ;
(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state . . . ;
(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons . . . ;
(7) Causing tortious injury to any person by a criminal act . . . ;
(8) Having an interest in, using, or possessing real property in this state;
(9) Contracting to insure any person, property, or risk located within this state at the time of contracting.

But a finding that the requisites for state-law long-arm jurisdiction have been met does not end the inquiry: the Due Process Clause requires that the defendant have sufficient "minimum contact[s]" with the forum state so that finding personal jurisdiction does not "offend traditional notions of fair play and substantial justice." *Third Nat'l Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). There are two kinds of personal jurisdiction within the Federal Due Process inquiry: (1) general personal jurisdiction, where the suit does not arise from defendant's contacts with the forum state; and (2) specific jurisdiction, where the suit does arise from the defendant's contacts with the forum state. *See id.* at 1089 (citing *Burger King*, 471 U.S. at 472–73 & n.15). The Supreme Court has declined to define an explicit test for general jurisdiction but has repeatedly held that for a non-resident defendant to be subject to the general jurisdiction of the forum state, his contacts with that state must be "continuous and systematic." *See, e.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 & n.9 (1984). And we have held that a finding of specific jurisdiction comprises three elements:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) (quoting *S. Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). Because Conn does not allege that his claims arise out of or are related to Zakharov's activities within Ohio, our consideration of federal law will be restricted to whether Due Process allows the imposition of general jurisdiction under the facts of this case.

**III.**

As we have mentioned, in order for an Ohio court to have jurisdiction over a non-resident defendant, the defendant must be (1) subject to long-arm jurisdiction under one of the enumerated bases of jurisdiction in Ohio's long-arm statute *and* (2) jurisdiction must accord with Due Process. *See Kauffman Racing*, 930 N.E.2d at 790; *Goldstein*, 638 N.E.2d at 543; *U.S. Sprint Commc'ns Co. P'ship v. Mr. K's Foods*, 624 N.E.2d 1048, 1051 (Ohio 1994). In other words, if jurisdiction is not proper under Ohio's long-arm statute there is no need to perform a Due Process analysis because jurisdiction over the defendant cannot be found. *See Brunner*, 441 F.3d at 467; *Keybank Nat'l Ass'n v. Tawill*, 715 N.E.2d 243, 245 (Ohio Ct. App. 1998). Because even Conn admits that this suit is not related to any of Zakharov's contacts with Ohio, Zakharov is not subject to long-arm jurisdiction under Ohio's long-arm statute. *See* § 2307.382(C) ("When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him."); *see also Kroger*, 437 F.3d at 511 ("In order to establish jurisdiction over a non-resident . . . , the defendant must be shown to meet one of the criteria enumerated in the Ohio long-arm statute . . . ."). This should be the end of our inquiry.

But although he implicitly acknowledges that Zakharov is not subject to jurisdiction under Ohio's long-arm statute, Conn nevertheless asserts that the district court has jurisdiction over Zakharov under three alternative theories. First, Conn argues that Zakharov is subject to personal jurisdiction in Ohio because he owns a residence in Ohio and that such a finding provides a basis for jurisdiction wholly apart from Ohio's long-arm statute. Second, Conn argues that Zakharov was served personally within the state and that such service makes personal jurisdiction proper under Supreme Court precedent. Finally, Conn argues that even if Ohio's long-arm statute applies, Ohio law recognizes the application of general jurisdiction, and Zakharov's contacts with the state are sufficiently continuous and systematic to satisfy general jurisdiction requirements. Conn's arguments are not persuasive.

**A.**

Conn first argues that because Zakharov owns, and occasionally uses, the Pepper Pike properties, he is a resident of Ohio and presumptively subject to the jurisdiction of the court. *See Prouse, Dash & Crouch, L.L.P. v. DiMarco*, 876 N.E.2d 1226, 1228 (Ohio 2007) ("It is axiomatic that Ohio courts can exercise jurisdiction over a person who is a resident of Ohio. Accordingly, if [the defendant is an] Ohio resident[], there is no need to analyze whether [he or she is] also subject to jurisdiction pursuant to . . . Ohio's long-arm statute."). If Zakharov is an Ohio resident it is also unlikely that finding jurisdiction on this basis would violate Due Process requirements.

Unfortunately for Conn, Ohio law does not hold that a person is a resident of Ohio merely because he or she owns a residence in Ohio, despite the semantic appeal of such a rule. The Ohio Supreme Court's opinion in *DiMarco* is instructive; there, the court was asked to decide whether the defendants—Bruce DiMarco ("DiMarco") and Ji Hae Linda Yum DiMarco ("Yum")—were Ohio residents and thus subject to the personal jurisdiction of Ohio courts. *Id.* at 1227–28. DiMarco, a U.S. citizen, and Yum, a Canadian citizen, were living in Canada at the time of the lawsuit.[3] *Id.* at 1129. Both DiMarco and Yum had formerly lived in Ohio; during that time, DiMarco had purchased a home and lived in it, procured an Ohio driver's license, and married Yum. *Id.* DiMarco traveled to, and stayed in, Canada pursuant to a tourist visa, which meant that he had to return to the United States every six months to renew the visa. *Id.*

The court in *DiMarco* expressly declined to give a precise definition of "resident" for jurisdictional purposes, but nonetheless noted that "case law, statutes, and rules are in accord that the intention of a person is a significant factor in determining where he or she legally resides." *Id.* Indeed, all of the examples of residence that the *DiMarco* court discussed required presence in the state with the intention to

---

[3]DiMarco fled Ohio to Canada in July 1999 after he learned that he was under investigation by the SEC; at the same time he transferred ownership of the Ohio house to Yum. *Id.* at 1228.

remain—i.e., permanent residence.[4] *Id.* at 1228–30; *cf. Martinez v. Bynum*, 461 U.S. 321, 330–31 (1983) ("[R]esidence generally requires both physical presence and an intention to remain."). The court further noted that the defendant's intent is relevant when demonstrated through the defendant's actions. *Id.* at 1229–30 ("[A] person's status as an Ohio resident is terminated when *her actions manifest her intent* to make her home in another state.") (citations omitted; emphasis added). Accordingly, the court held that DiMarco had demonstrated an intent to be an Ohio resident by marrying in Ohio, buying a home and living in Ohio, and procuring an Ohio driver's license, but that he had not demonstrated an intent to establish residence in Canada, largely because he traveled to Canada with a tourist visa, which meant that he could not stay permanently, and because he left Ohio only to avoid prosecution. *DiMarco*, 876 N.E.2d at 1230. Yum, on the other hand, the *DiMarco* court held, was not a resident of Ohio because her actions had demonstrated that she intended to move permanently to Canada even though she still owned the house in Ohio.[5] *Id.*

Looking at the facts of this case, we cannot conclude that Zakharov has demonstrated an intent to be an Ohio resident—that is, the intent to remain permanently in Ohio. Zakharov travels to Ohio under a tourist or business visa, which means that he must eventually leave Ohio to return to Russia. The fact that DiMarco traveled to Canada on a tourist visa was persuasive evidence to the *DiMarco* court that he had no intent to remain in Canada permanently; Zakharov's traveling to Ohio under a tourist visa is similarly persuasive to us. Furthermore, Zakharov is not registered to vote in Ohio, does not have an Ohio driver's license, and has spent an average of only a few

---

[4]The *DiMarco* court discussed the term "resident" in a number of contexts, but each required presence in Ohio and intention to stay permanently. In the context of divorces and annulments, a "resident" is one who "possesses a domiciliary residence, . . . accompanied by an intention to make the state of Ohio a permanent home." In the context of obtaining a driver's license, a "resident" is a person who "currently either lives within Ohio [or who] has left Ohio, for temporary purposes only, with a specific intention to return to Ohio to live"—who "resides in this state on a permanent basis." Factors governing whether a student is a "resident" for state subsidy purposes include whether he or she intends to remain in Ohio after graduation, as well as whether the student maintained a residence in Ohio for twelve months and has not remained a resident of another state or nation. *Id.* at 1229 (citations omitted).

[5]The court remanded to the Ohio Court of Appeals to determine whether Yum was subject to Ohio's long-arm statute, and that court held that she was not. *See Prouse, Dash & Crouch, L.L.P. v. DiMarco*, 887 N.E.2d 1211, 1213–16 (Ohio Ct. App. 2008).

weeks a year in Ohio over the past several years.  Crucially, the *DiMarco* court appeared to reject the assertion that Yum's home ownership by itself made her a resident of Ohio.  *See DiMarco*, 876 N.E.2d at 1230.  Given Zakharov's objective intent not to establish a residence in Ohio, under Ohio law his ownership of property there does not otherwise make him a resident who is subject to the jurisdiction of the district court.

Conn nevertheless argues that Ohio courts have long recognized that a person may have multiple residences and that *DiMarco* is inapplicable here because it was discussing domicile, which he claims is a different concept altogether.  *See Rickabaugh v. Vill. of Grand Rapids*, No. WD-94-102, 1995 Ohio App. LEXIS 2431, at *11 (Ohio Ct. App. June 9, 1995); *Snelling v. Gardner*, 69 Ohio App. 3d 196, 201 (1990); *Bd. of Educ. v. Dille*, 109 Ohio App. 344, 348 (1959).  *DiMarco*, however, is precisely on point; unlike the cases Conn cites for support, it is an Ohio Supreme Court opinion that discusses residence in the context of personal jurisdiction.  *See Miles v. Kohli & Kaliher Assoc., Ltd.*, 917 F.2d 235, 241 (6th Cir. 1990) (stating that in a diversity case "we follow the law of Ohio as announced by that state's supreme court").

## B.

Conn next argues that he believes Zakharov was personally served in Ohio and that such service confers jurisdiction under *Burnham v. Superior Court of California*, 495 U.S. 604 (1990).  The district court declined to find jurisdiction on this basis because (1) service of process was not made on Zakharov personally, but was actually made on Zakharov's agent by certified mail while Zakharov was not present in the state, and (2) because there was no majority opinion in *Burnham* and it should  be limited to its facts, a holding that has some support in other jurisdictions.  *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .'" (quoting *Gregg v. Georgia*, 428 U.S. 153 (1976)); *United States v. Martino*, 664 F.2d 860, 872–73 (2d Cir. 1981) (noting that where no opinion receives a majority vote the case should have binding precedential

value only on the narrowest ground that a majority of justices agreed upon); *see also WorldCare Ltd. v. World Ins. Co.*, 767 F. Supp. 2d 341, 351 (D. Conn. 2011) ("[T]here was no plurality opinion written in *Burnham*, suggesting that perhaps the holding should be limited to the particular facts set forth therein.").

We need not tackle the question of *Burnham*'s reach because the district court is correct with regard to the facts; there was no personal service on Zakharov.  Even assuming that *Burnham* permits jurisdiction based solely on proper, personal service of process on a defendant who is present within the forum state, there could be no jurisdiction here based on such service.  Conn sent service of process through certified mail to Zakharov's Pepper Pike property.  His housekeeper received that process when Zakharov was not in the United States.  Some time later, Zakharov arrived in Ohio and was given the documents.  This is clearly not "personal service" as envisioned by Ohio law, which requires that personal service of process be accomplished by the sheriff or bailiff of the jurisdiction, or by a person over eighteen "who has been designated by order of the court."  OHIO CIV. R. 4.1(B).  And receipt of service of process through certified mail is not sufficient by itself to convey jurisdiction under Ohio's long-arm statute and its accompanying rule of civil procedure.  *See* OHIO CIV. R. 4.3 (stating that service is proper on a non-resident only if that person "has caused an event to occur out of which the claim that is the subject of the complaint arose"); *see also Kaufmann Racing*, 930 N.E.2d at 791 ("Civ. R. 4.3 allows service of process on nonresidents in certain circumstances and mirrors the long-arm statute . . . .").  Indeed, service of process through certified mail does not implicate the "established principles" reviewed in Burnham, namely, that "personal service upon a physically present defendant suffice[s] to confer jurisdiction."  *Burnham*, 495 U.S. at 612 (Scalia, J., plurality opinion).  Because Zakharov was not properly served when he was physically present within Ohio, the *Burnham* analysis is simply inapposite.

**C.**

Lastly, Conn asserts that even though Zakharov is not subject to long-arm jurisdiction under one of the enumerated bases of jurisdiction in Ohio's long-arm statute—i.e., specific jurisdiction—Zakharov is still subject to jurisdiction because Ohio law recognizes general jurisdiction. Conn maintains that Zakharov's ownership of the Pepper Pike properties, as well as other contacts related to the use of those properties—such as the vehicles and the Ohio bank account—are sufficient to have caused Zakharov to "'reasonably anticipate being haled into court [in Ohio].'" *Third Nat'l Bank*, 882 F.2d at 1089 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). In essence, Conn is arguing that Ohio jurisdiction law is coterminous with Federal Due Process, at least with regard to general jurisdiction, and that Due Process allows for general jurisdiction over Zakharov under the facts of this case. Conn is incorrect.

First, as we have explained, Ohio law does not appear to recognize general jurisdiction over non-resident defendants, but instead requires that the court find specific jurisdiction under one of the bases of jurisdiction listed in Ohio's long-arm statute. Indeed, to hold otherwise would come dangerously close to collapsing Ohio's two-part jurisdictional inquiry into one, an outcome that the Ohio Supreme Court has repeatedly rejected. *See, e.g.*, *Goldstein*, 638 N.E.2d at 545 & n.1. We do acknowledge, however, that courts within the Sixth Circuit have come to inconsistent, and in some cases directly contradictory, conclusions on whether Ohio law recognizes general jurisdiction, with some cases holding that it does and other cases explicitly taking the opposite view or simply holding that Ohio law requires application of the long-arm statute in order to find jurisdiction over a non-resident defendant.[6] But the pro-general-jurisdiction cases trace

---

[6] *Compare Gerber v. Riordan*, 649 F.3d 514 (6th Cir. 2011) (holding that Ohio jurisdiction law is interpreted "with reference to the limits of federal due process"), *and Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357 (6th Cir. 2008) (holding that Ohio recognizes general jurisdiction), *and Brunner v. Hampson*, 441 F.3d 457 (6th Cir. 2006) (same), *and Keybank Capital Mkts. Inc. v. Alpine Biomed Corp.*, No. 1:07-cv-1227, 2008 U.S. Dist. LEXIS 112156 (N.D. Ohio Mar. 7, 2008) (same), *with Kroger*, 437 F.3d at 510–11 (holding that one of the criteria of Ohio's long arm statute must be met in order to find jurisdiction over a non-resident defendant), *and Calphalon Corp.*, 228 F.3d at 721 (same), *and Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) (same), *and Pittock v. Otis Elevator Co.*, 8 F.3d 325, 327 (6th Cir. 1993) (same), *and Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425,

the rule to *Nationwide Mutual Insurance v. Tryg International Insurance*, 91 F.3d 790, 793 (6th Cir. 1996), which is not a firm foundation for an interpretation of Ohio law. *Nationwide* stated that the Ohio long-arm statute was coextensive with the Due Process Clause and that:

> Jurisdiction may be found to exist either generally, in cases in which a defendant's 'continuous and systematic' conduct within the forum state renders that defendant amenable to suit in any lawsuit brought against it in the forum state, or specifically, in cases in which the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum.

*Id.* (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445–47 (1952)).  But *Perkins* did not analyze Ohio law and held only that the state's subjecting the defendant to personal jurisdiction did not violate Federal Due Process.  *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445–49 ("Using the tests mentioned above we find no requirement of federal due process that either prohibits Ohio from opening its courts to the cause of action here presented or compels Ohio to do so.").  Further, the Ohio Supreme Court held in *Goldstein*, 638 N.E.2d at 543–45 & n.1, and recently affirmed in *Kauffman Racing*, 930 N.E.2d at 790, that jurisdiction over non-resident defendants must be found in Ohio's long-arm statute and that the long-arm statute *does not* extend to the limits of Due Process.  *See also Mr. K's Foods*, 624 N.E.2d at 1051.  We must follow Ohio Supreme Court precedent with reference to Ohio law; it is clear that under Ohio law, a court may exercise personal jurisdiction over a non-resident defendant only if specific jurisdiction can be found under one of the enumerated bases in Ohio's long-arm statute.  Accordingly, Zakharov is not subject to personal jurisdiction under the facts of this case.

Second, even if Ohio law does recognize general jurisdiction over non-resident defendants, Federal Due Process law does not allow for general jurisdiction based on

---

429–30 (6th Cir. 2006) (same), *and Vorhis v. Am. Med. Sys., Inc.*, No. 96-3525, 1997 U.S. App. LEXIS 22442, at *3–4 (6th Cir. Aug. 19, 1997) (same), *and Beightler v. Produkte fur Die Medizin AG*, 610 F. Supp. 2d 847, 849–50 (N.D. Ohio 2009) (same), *and NCR Corp. v. PC Connection, Inc.*, 384 F. Supp. 2d 1152, 1157 (S.D. Ohio 2005) (holding that Ohio law does not recognize general jurisdiction over non-resident defendants), *and Signom v. Schenck Fuels, Inc.*, No. C-3-07-037, 2007 U.S. Dist. LEXIS 42941, at *3–9 (S.D. Ohio June 13, 2007) (same).

Zakharov's contacts with Ohio.  As we have explained, "[t]he Supreme Court distinguishes between 'general' jurisdiction and 'specific' jurisdiction, either one of which is an adequate basis for personal jurisdiction" under the Due Process Clause. *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003) (citations omitted).  We must decide whether Zakharov's contacts with Ohio are so "pervasive" that we can find jurisdiction even if the suit has nothing to do with those contacts, as is the case here. *See, e.g.*, *Aristech Chem. Int'l v. Acrylic Fabricators, Ltd.*, 138 F.3d 624, 627–28 (6th Cir. 1998); *see also Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (holding that in order for contacts to be continuous and systematic they must "approximate[] physical presence within the state's borders"), *overruled on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199 (9th Cir. 2006); 4 CHARLES ALLEN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1067.5, at 520 (3d ed. 2002) (commenting that the Supreme Court's holding in *Helicopteros* "suggests very strongly that the threshold contacts required for a constitutional assertion of general jurisdiction over a nonresident defendant are very substantial, indeed. . . . quite rigorous").  And even if Zakharov had pervasive contacts with Ohio, we would still need to find that such jurisdiction comports with "fair play and substantial justice."  *Int'l Shoe*, 326 U.S. at 320; *see also Burger King*, 471 U.S. at 476–77 (stating that a court should decline to find jurisdiction if "the presence of some other considerations would render jurisdiction unreasonable").  The Court in *Burger King* noted a few factors for evaluating reasonableness, including:

> the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

471 U.S. at 477 (internal quotations marks and citation omitted); *see also City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 666 (6th Cir. 2005) ("Whether the exercise of jurisdiction over a foreign defendant is reasonable is a function of balancing three factors:  'the burden on the defendant, the interests of the forum State, and the

plaintiff's interest in obtaining relief.'"  (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987))).

At first blush it would seem that Zakharov does have continuous and systematic contacts with Ohio; he owns property in Ohio, owns vehicles in Ohio, travels to Ohio on a yearly basis, maintains a bank account in Ohio, and has even engaged in litigation in Ohio.  But all of Zakharov's contacts, even the litigation, relate to his ownership of property in Ohio.  In discussing the effect of property ownership within the *International Shoe* minimum contacts framework, the Supreme Court stated that:

> [T]he mere presence of property in a State does not establish a sufficient relationship between the owner of the property and the State to support the exercise of jurisdiction over an unrelated cause of action.  The ownership of property in the State is *a* contact between the defendant and the forum, and it may suggest the presence of other ties.  Jurisdiction is lacking, however, unless there are sufficient contacts to satisfy the fairness standard of *International Shoe*.

*Rush v. Savchuk*, 444 U.S. 320, 328 (1980) (citation omitted); *see also Shaffer v. Heitner*, 433 U.S. 186, 213 (1977) ("[P]roperty [that] is not the subject matter of this litigation, nor is the underlying cause of action related to the property[,] . . . [does not] provide contacts . . . sufficient to support the jurisdiction of that State's courts over appellants.  If it exists, that jurisdiction must have some other foundation.").  Accordingly, the fact that Zakharov owns the Pepper Pike properties, the Ohio bank account, the automobiles, and other forms of property is not by itself sufficient to confer general jurisdiction.  What other "foundation," then, does this record reveal? Zakharov was embroiled in litigation in Ohio state court, but that was a dispute relating to his property ownership in Ohio, a dispute or litigation that Zakharov did not initiate.  *See Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 n.4 (5th Cir. 1990) (holding that the defendant's participation in several unrelated lawsuit within the forum is not sufficient to grant general jurisdiction).  So it would appear that Zakharov's only other significant contact with Ohio is, of course, the fact that every year since 2007 he has traveled to Ohio from Russia and stayed within the state a variable but usually relatively short period of time.

We do not believe that Zakharov's yearly travel to Ohio amounts to contacts sufficiently continuous and systematic to confer general jurisdiction. *See Helicopteros Nacionales*, 466 U.S. at 416–17 (holding that a trip by the defendant's CEO to Texas, purchases of equipment for significant sums from Texas, and sending personnel for training in Texas was not enough to confer general jurisdiction); *Nationwide*, 91 F.3d at 794 (citing *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1045–46 (2d Cir. 1991), positively for the holding that thirteen business trips over the course of eighteen months did not constitute "continuous and systematic" contacts with the forum state); *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1329–31 (9th Cir. 1984) (holding that defendant's seven visits over three years to the forum state, purchase of over $200,000 worth of products from the forum state, and numerous phone calls and letters to the forum state were more "occasional than continuous, and more infrequent than systematic"). We would not hold that a person's annual travel to Ohio for a week-long trade-show is enough to subject her to the general jurisdiction of the state, and we similarly will not hold that Zakharov's yearly trip to Ohio in relation to his personal use of property is sufficient to confer general jurisdiction, particularly where he does not engage in any kind of business within Ohio.[7] Simply put, these are not the kinds of pervasive contacts that would approximate physical presence within the state, and certainly not the kinds of contacts that Zakharov could reasonably anticipate engendering litigation unrelated to his presence in Ohio.

Even if we did find that Zakharov's contacts were sufficient to subject him to the state's general jurisdiction, we do not believe that exercising jurisdiction would accord with "fair play and substantial justice." First, the burden on Zakharov to defend this

---

[7]The Supreme Court has suggested in dicta that:

> It may be that whatever special rule exists permitting "continuous and systematic" contacts . . . to support jurisdiction with respect to matters unrelated to activity in the forum applies only to corporations, which have never fitted comfortably in a jurisdictional regime based primarily upon "de facto power over the defendant's person." We express no views on these matters . . . .

*Burnham*, 495 U.S. at 610 n.1 (citations omitted). We do not hold that general jurisdiction applies only to corporations, but we note that there are a dearth of cases that find general jurisdiction under the Due Process Clause over a natural person who is not otherwise subject to jurisdiction, and we decline to find it in this case.

action in Ohio is heavy because he lives in Russia and would have to travel around the world to engage in litigation. *See, e.g.*, *Euroglas S.A.*, 107 F.3d at 393 (asserting that there is no reason to doubt that Michigan is a "distant or inconvenient forum" for a Switzerland-based defendant for Due Process purposes); *Jensen*, 743 F.2d at 1333 ("Litigating abroad imposes significant inconveniences upon the party appearing in a foreign country."); *Faurecia Exhaust Sys., Inc. v. Walker*, 464 F. Supp. 2d 700, 707–08 (N.D. Ohio 2006) (noting that the burden on a non-U.S. resident "is obvious and substantial"). We also note that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal*, 480 U.S. at 115. Second, Ohio has no interest in this lawsuit—which involves an alleged agreement that was not negotiated in Ohio, agreed to in Ohio, or intended to be performed in Ohio—when neither party is a resident or citizen of Ohio, foreign law will be applied, and no effects from the dispute will be felt in Ohio. *See id.* at 114–15 (stating that California's interest in the litigation was "considerably diminished" when neither of the parties was a California resident and it was unclear that California law would even be applied); *OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1096–97 (10th Cir. 1998) (holding that the state interest factor "weighs heavily in favor of Defendants" where neither party was a state resident, foreign law governs the case, and there were no effects in the state).[8] Finally, although Conn clearly has an interest in bringing this action in Ohio, he is not foreclosed from bringing the suit in the District of Columbia—indeed, his counsel agreed at oral argument that this was an option—and Conn may always bring the lawsuit in a Russian court, which he admits would have jurisdiction and would hear the case on the merits, even if the merits appear to be stacked against Conn under Russian law. Therefore, Ohio is not the only forum where Conn may attempt to gain relief from his alleged harm. *See, e.g.*, *Fortis Corp. Ins. v.*

---

[8]In addition, Ohio is simply not the most efficient forum for hearing this case: "Key to this inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *OMI Holdings*, 149 F.3d at 1097 (citations omitted). Most of the witnesses are in Russia, the alleged breach of contract occurred in Russia, either District of Columbia or Russian law will govern the case, and piecemeal litigation is not an issue. *See Pac. Atl. Trading Co. v. M/V Main Express*, 758 F.2d 1325, 1331 (9th Cir. 1985) ("The site where the injury occurred and where evidence is located usually will be the most efficient forum.").

*Viken Ship Mgmt.*, 450 F.3d 214, 223 (6th Cir. 2006) (stating that the plaintiff's interest is "particularly keen" where the suit is "its only means for obtaining relief"). On balance, considerations of "fair play and substantial justice" counsel us against finding jurisdiction in Ohio under the facts of this case.

## IV.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.